FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

2013 JUN -6 PM 1: 23

CASE NUMBER:

MICHAELA COLENDRES,

    Plaintiff,

v.

6:13-cv-875-ORL-18GJK

SANTANDER CONSUMER USA, INC.
a Foreign Corporation doing business in
Florida, and FLTVT, L.L.C. a Florida
Limited Liability Company, d/b/a DAVID
MAUS TOYOTA

    Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiff, MICHAELA COLENDRES (hereinafter "MS. COLENDRES"), by and through her undersigned attorneys, hereby sues the Defendant, SANTANDER CONSUMER USA, INC (hereinafter "FINANCE"), and FLTVT, L.L.C. a Florida Limited Liability Company, d/b/a DAVID MAUS TOYOTA (hereinafter "DEALER") and states as follows:

### Jurisdiction and Venue

1.  This Court has jurisdiction over the federal claims stated herein and the principles of a pendant and ancillary jurisdiction over state common law claims. This action arises, *inter alia*, under the Truth in Lending Act (15 U.S.C. §§ 1601et seqs), as more fully appears in this Complaint.

1.  Venue is proper in this District because the acts and practices constituting violations of the above-cited statutes and the other causes of action upon which this Complaint is based have occurred within the territory of the Middle District of Florida, and both the Plaintiff

resides in Volusia County, and the Defendant conducts business in Seminole County Florida.

## The Parties

2.  The Plaintiff, MS. COLENDRES is a natural person who resides in Volusia County, Florida and is *sui juris*.

3.  The Defendant, FINANCE, is a Texas corporation with its head office located in Dallas, Texas, and it carries on business in Seminole County, Florida.

4.  The Defendant, DEALER, is a Florida Limited Liability with its head office located in Phoenix, Arizona, and it carries on business in Seminole County, Florida.

## Factual Background

5.  On or about September 29, 2012, MS. COLENDRES and the DEALER entered into a sales and finance contract for a 2012 New Toyota Camry Vehicle Identification Number 4T1BF1FZ1CU165893 (hereinafter referred to as the "vehicle"). A Copy of the Purchase Agreement, and the Simple Finance Contract (hereinafter referred to as the Finance Contract) are attached hereto and respectively marked as Exhibit "A," and "B."

6.  Pursuant to the September 29, 2012, Finance Contract:

    | | |
    |---|---|
    | The Annual Percentage Rate: | 16.78% |
    | The purchase price of the vehicle: | $25,832.73 |
    | The amount of the down payment: | $1,200.00 |
    | Total amount to be finance: | $25,189.28 |
    | Finance Charge: | $15,214.96 |
    | Monthly payments for 72 months: | $561.17 |

7.  MS. COLENDRES, and the DEALER fully executed the Simple Finance Contract, and MS. COLENDRES took delivery of the vehicle.

8.  Monthly payments on the Finance Contract were to begin on November 13, 2012.

THE TICKTIN LAW GROUP, P.A.
600 WEST HILLSBORO BOULEVARD, SUITE 220, DEERFIELD BEACH, FLORIDA 33441-1610
TELEPHONE: (954) 570-6757

9. On or about October 11, 2012, MS. COLENDRES received Correspondence from FINANCE, thanking MS. COLENDRES for choosing Roadloans.com as her lender, and that her first payment of $574.51 was due on November 9, 2012. A copy of the letter and the terms of the agreement are attached hereto and marked as Exhibit "C."

10. Pursuant to the October 11, 2012, Correspondence the terms included:

| | |
|---|---|
| The Annual Percentage Rate: | 18.00% |
| The purchase price of the vehicle: | $25,101.08 |
| The amount of the down payment: | $0 |
| Total amount to be finance: | $25,189.28 |
| Finance Charge: | $16,175.44 |
| Monthly payments for 72 months: | $574.51 |

11. MS. COLENDRES immediately contacted FINANCE, as the above listed numbers did not match those in the agreed to Finance Contract.

12. An agent of FINANCE was unable to determine why the amount requested by FINANCE and the amount on the Finance Contract were different, the Agent advised MS. COLENDRES not to make a payment until the situation was reviewed.

13. The agent of FINANCE explained that making a payment for the wrong amount would only confuse the issue and "rewind" the contract.

14. In reliance upon FINANCE's statements, MS. COLENDRES did not make a payment in November 2012.

15. On or about November 30, 2012, FINANCE sent MS. COLENDRES a correspondence indicating that she had not made a payment and for her to contact a FINANCE agent. A copy of the correspondence is attached hereto and marked as Exhibit "D."

16. The FINANCE agent again assured MS. COLENDRES that while the process was under review, MS. COLENDRES would incur no late fines, or negative reporting on her

3

credit.

17. However, on or about December 20, 2012, MS. COLENDRES received a Notice of Right to Cure Default. FINANCE threatened to repose the vehicle is MS. COLENDRES did not pay a total of $1,149.02 by January 2, 2013. A copy of FINANCE's December 20, 2012, letter is attached hereto and marked as Exhibit "E."

18. MS. COLENDRES concerned her vehicle would be repossessed, paid $1169.02 on January 2, 2013.

19. Despite paying more than the amount requested in the December 20, 2012, letter, MS. COLENDRES's account continued to show a past amount due and late charges. A copy of the loan statement attached hereto and marked as Exhibit "F."

20. On January 15, 2012, MS. COLENDRES wrote a letter to the President of FINANCE again disputing the numbers presented in her account, and requesting for the errors corrected. A copy of the correspondence is attached hereto and marked as Exhibit "G."

21. A copy of an alleged agreement title "Note and Security Agreement" (hereinafter referred to as the "Note") between MS. COLENDRES and FINANCE was finally provided after repeated telephone calls and letters for the Office of the President of FINANCE. A copy of the Note is attached hereto and marked as Exhibit "H."

22. The Note appeared signed by the MS. COLENDRES with terms including an 18% interest rate and an amount to be financed at $25.210.68, only the handwritten identification of the vehicle matched the Finance Contract.

23. The numbers on the Note did not match either the September 29, 2012 Finance Contract, or FINANCE's October 11, 2012 correspondence.

24. Moreover, the Note purportedly signed on September 25, 2012, four days prior to

4

MS. COLENDRES having seen or purchased the vehicle identified in the Note.

25. MS. COLENDRES had never seen the Note before, nor did she sign it.

26. MS. COLENDRES has continued to make payments of $574.51 under duress of her vehicle being repossessed.

27. MS. COLENDRES has retained the services of the undersigned firm and agreed to pay it reasonable attorney's fees and costs for the representation in this matter.

28. All conditions precedent have been met or waived in this action.

### Count I. Breach of Contract

29. MS. COLENDRES avers all of the allegations contained in paragraphs 1 through 28 above, and it incorporates them by reference as though they were fully set forth herein.

30. MS. COLENDRES and DEALER entered into the Finance contract for the purchase of the vehicle.

31. MS. COLENDRES and DEALER both signed the Finance Contract and agreed to the terms therein.

32. FINANCE as the assignee of the DEALER has subsequently demanded sums in excess of the Finance Contract from the MS. COLENDRES under the threat of repossession.

33. As a direct, proximate, and foreseeable result of the Defendants actions, MS. COLENDRES has been forced to pay additional sums of money despite there being no agreement between the parties for the same.

WHEREFORE MS. COLENDRES respectfully requests this Court entered a Judgment in her favor for the compensatory, and consequential damages, including attorneys fees and costs, and any other and further relief as this Court deems just and equitable.

THE TICKTIN LAW GROUP, P.A.
600 WEST HILLSBORO BOULEVARD, SUITE 220, DEERFIELD BEACH, FLORIDA 33441-1610
TELEPHONE: (954) 570-6757

## Count II. Violations of Florida's Deceptive and Unfair Trade Practices Act
## Florida Statute Chapter §501

34. MS. COLENDRES avers all of the allegations contained in paragraphs 1 through 28 above, and it incorporates them by reference as though they were fully set forth herein.

35. MS. COLENDRES is a Consumer pursuant to Florida Statute § 501.203(7).

36. The DEALER conducts Trade or Commerce pursuant to Florida Statute § 501.203(7).

37. Pursuant to Florida Statute § 516.31(2) FINANCE is the holder of the Finance Contract in due course, which originated from the purchase of the vehicle, and is subject to all claims and defenses of MS. COLENDRES against the DEALER of those consumer goods or services

38. MS. COLENDRES entered into the Finance Contract with the DEALER for the purchase of the vehicle, MS. COLENDRES agreed to the terms:

| | |
|---|---|
| The Annual Percentage Rate: | 16.78% |
| The purchase price of the vehicle: | $25,832.73 |
| The amount of the down payment: | $1,200.00 |
| Total amount to be finance: | $25,189.28 |
| Finance Charge: | $15,214.96 |
| Monthly payments for 72 months: | $561.17 |

39. However, shortly after taking delivery of the vehicle, FINANCE claimed the terms of the agreement for the vehicle were:

| | |
|---|---|
| The Annual Percentage Rate: | 18.00% |
| The purchase price of the vehicle: | $25,101.08 |
| The amount of the down payment: | $0 |
| Total amount to be finance: | $25,189.28 |
| Finance Charge: | $16,175.44 |
| Monthly payments for 72 months: | $574.51 |

40. DEALER and FINANCE agreed to extra contractual changes to the Finance Contract, without proper disclosure or agreement of the MS. COLENDRES.

41. DEALER knew that once MS. COLENDRES was in the vehicle, and the Finance Contract sold it would be almost impossible for MS. COLENDRES to rescind the deal, leaving her to pay in the amended, and more onerous financing terms.

42. FINANCE as the assignee of the Finance Contract threatened to repossess the Ms. COLENDRES's vehicle if she did not pay the increased monthly payments.

43. As a direct, proximate, and foreseeable result of the Defendants actions, MS. COLENDRES was forced to pay additional sums of money despite there being no agreement between the parties for the same.

44. As a direct, proximate, and foreseeable result of the Defendants actions, MS. COLENDRES was to pay additional sums of money despite there being no agreement between the parties for the same.

WHEREFORE the MS. COLENDRES respectfully requests this Court enter a Judgment adjudicating that the DEALER and FINANCE companies actions were unfair and deceptive, and award MS. COLENDRES the amounts she has overpaid to FINANCE, and attorneys fees and costs, and any and other further relief as may be just and fair.

### Count III. Unfair Trade Practices Involving Non-Compliance, 15 USC Sections 1601, Et. Seq and Regulation Z

45. MS. COLENDRES avers all of the allegations contained in paragraphs 1 through 28 above, and it incorporates them by reference as though they were fully set forth herein.

46. DEALER offered MS. COLENDRES, a consumer, credit to purchase the vehicle.

47. MS. COLENDRES purchased the vehicle for personal or household purposes.

The Ticktin Law Group, P.A.
600 West Hillsboro Boulevard, Suite 220, Deerfield Beach, Florida 33441-1610
Telephone: (954) 570-6757

48. The Defendants offer or extends credit regularly to the public.

49. The Finance Contract, included a finance charge, and was repayable by written agreement in more than four installments

50. The credit is for an amount less than Fifty Thousand Dollars.

51. MS. COLENDRES and DEALER entered into the Finance Contract for the purchase of the vehicle, subsequent to the purchase DEALER assigned its interest in the Finance Contract to FINANCE.

52. DEALER and FINANCE agreed to extra contractual changes to the Finance Contract, without proper disclosure or agreement of the MS. COLENDRES.

53. FINANCE demanded sums in excess of the Finance Contract unilaterally altering the terms of the agreement.

54. As a direct, proximate, and foreseeable result of the Defendants actions, MS. COLENDRES was forced to pay additional sums of money despite there being no agreement between the parties for the same.

WHEREFORE the MS. COLENDRES respectfully requests this Court, enter a Judgment awarding MS. COLENDRES the amounts she has overpaid to FINANCE and any and other further relief as may be just and fair.

### Count IV. Violation of Florida Statute § 772.103

55. MS. COLENDRES avers all of the allegations contained in paragraphs 1 through 28 above, and it incorporates them by reference as though they were fully set forth herein.

56. FINANCE knew that MS. COLENDRES had subsequently agreed to an increase in the amount of interest to be paid under the Finance Contract.

57. When MS. COLENDRES questioned FINANCE's basis for unilaterally

8

THE TICKTIN LAW GROUP, P.A.
600 WEST HILLSBORO BOULEVARD, SUITE 220, DEERFIELD BEACH, FLORIDA 33441-1610
TELEPHONE: (954) 570-6757

increasing its interest and finance fees, FINANCE produced the Note, which it purported to be signed by MS. COLENDRES.

58. However, it is clear that the Note was dated days before MS. COLENDRES had even contemplated purchasing the vehicle.

59. FINANCE with intended to force MS. COLENDRES to pay additional fees by threatening to repossess the vehicle if she did not pay.

60. FINANCE received and benefitted from the proceeds derived, directly or indirectly, from through the collection of an unlawful.

61. Due to FINANCE's unlawful and felonious debt collection, MS. COLENDRES was damaged.

WHEREFORE MS. COLENDRES respectfully requests this Court entered a Judgment pursuant to Florida Statute § 772.104 for treble damages, attorneys fees and costs, and any other and further relief as this Court deems just and equitable.

**Demand for Jury Trial**

**Respectfully Submitted May 20, 2013**

**THE TICKTIN LAW GROUP, P.A.**
600 West Hillsboro Boulevard
Suite 220
Deerfield Beach, Florida 33441-1610
Telephone: (954) 570-6757
Fax: (954) 570-6760

_____
JOSHUA BLEIL
jbleil@legalbrains.com
Florida Bar No.: 11759

9

THE TICKTIN LAW GROUP, P.A.
600 WEST HILLSBORO BOULEVARD, SUITE 220, DEERFIELD BEACH, FLORIDA 33441-1610
TELEPHONE: (954) 570-6757